**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICARDO NATIVIDAD,** | **CIVIL ACTION** |
| *Plaintiff,* | |
| *v.* | **NO.** |
| | |
| **JOHN WETZEL** | **JURY TRIAL DEMANDED** |
| -and- | |
| **GEORGE M. LITTLE** | |
| -and- | |
| **JAMIE SORBER** | |
| -and- | |
| **TODD FAUBERT** | |
| -and- | |
| **JOHN/JANE DOES 1 - 100** | |
| -and- | |
| **PA DEPARTMENT OF CORRECTIONS,** | |
| *Defendants.* | |

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.     Plaintiff, Riccardo Natividad ("Plaintiff"), was continuously held in Solitary Confinement in the CCU for more than twenty-four (24) years, from 1997 until more than 6 months after vacation of his death-penalty sentence by the Honorable Cynthia M. Rufe on August 24, 2021, at SCI Phoenix, an institution designated for death row prisoners.

2.     Mr. Natividad, following his Death Sentence, received by way of a jury in November of 1997, was transferred from a County Jail to a State Penitentiary, where he saw an

initial Program Review Committee (hereinafter "PRC"), which asked several questions and then informed him he will be placed in solitary confinement indefinitely. Mr. Natividad was classified and transferred to SCI Phoenix, which houses death row prisoners on the Capital Case Unit (hereinafter "CCU").

3.      Mr. Natividad's placement in solitary confinement was not based on disciplinary violation or individualized consideration of his behavior. The DOC automatically placed Mr. Natividad in permanent solitary confinement based solely on his criminal sentence.

4.      This unlawful act by the DOC put Mr. Natividad under cruel, inhumane, and degrading treatment for more than 6 months after vacation of judgment of his death-penalty sentence and despite the filing of multiple grievances which were unanswered. This harmful treatment in an environment known to lead to mental health issues amounted to and continues to cause serious psychological and physiological harm.

5.      Mr. Natividad's twenty-four-plus-year commitment to solitary confinement, even after vacation of judgment of sentence, was cruel and unusual and violated his rights under the Eighth Amendment to the United States Constitution. The DOC's refusal to conduct any legitimate review of Mr. Natividad's housing status, despite vacation of judgment of sentence and multiple grievances, violated his rights to due process of law pursuant to the Fourteenth Amendment to the United States Constitution.

6.      Mr. Natividad brings this action pursuant to 42 U.S.C. § 1983, seeking compensatory damages from the DOC resulting from his time improperly and illegally committed to solitary confinement (and the resulting harm he has sustained).

## II.  JURISDICTION

7.      This Court has jurisdiction over Mr. Natividad's claims pursuant to 28 U.S.C. §
1331, 1343(a)(3)-(4) and 42 U.S.C. § 1983.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial
part of the events or omissions giving rise to these claims occurred within this District.

9.      Venue also is proper in this This Court under 28 U.S.C. § 1391(b)(1) because at
least one Defendant resides in the Eastern District of Pennsylvania and all Defendants reside in
Pennsylvania.

## III.  PARTIES

10.      Plaintiff, Ricardo Natividad, (hereinafter "Plaintiff"), is an adult individual, who at
all times material hereto was incarcerated on Pennsylvania's death row under the custody, control,
and care of the DOC, State Correctional Institute (hereinafter "SCI") Phoenix, located at 1200
Mokychic Road, Collegeville, PA 19426.

11.      Defendants, John Wetzel (hereinafter "Defendant Wetzel") and Gregory Little
(hereinafter "Defendant Little"), are adult individuals who work or worked and/or reside in the
Commonwealth of Pennsylvania. Together with all the Secretaries of Corrections (hereinafter
"SOC") In the Commonwealth of Pennsylvania from 1980-2022, they operated, managed,
directed, and controlled the DOC. At all times relevant to this Complaint, each Secretary was the
policymaker of the DOC with respect to death row prisoners and each policymaker Defendant also
had personal involvement in keeping Plaintiff in solitary confinement for a prolonged period after
vacation of judgment of sentence. To the extent that any of these Secretaries were not deemed
overseers and policymakers of capital case rules, regulations, and policies under relevant law, each
Secretary had policy-making authority to delegate and change policy with respect to matters in

this Complaint. At all times relevant, Defendants SOC were acting under the color of state law and within the scope of their employment as an official of the DOC, with a principal place of business located at 1920 Technology Parkway in Mechanicsburg, PA 17050.

12.     Defendant, Jamie Sorber (hereinafter "Defendant Sorber"') is an adult Individual who at all times material hereto worked and/or resided in the Commonwealth of Pennsylvania and was employed as the Superintendent for SCI Phoenix. Defendant Sorber did maintain, control, and/or manage the SCI located at 1200 Mokychic Road, Collegeville, PA 19426.

13.     Defendant Todd Faubert (hereinafter "Defendant Faubert"), is an adult individual who at all times material hereto worked and/or resided in the Commonwealth of Pennsylvania and was employed as a Unit manager for SCI Phoenix. Defendant Faubert did maintain, control, and/or manage the Capital Case in the SCI located at 1200 Mokychic Road, Collegeville, PA 19426.

14.     Defendant, Pennsylvania DOC (hereinafter "Defendant DOC"), is an agency of the Commonwealth that houses persons serving sentences of incarceration and at all times material hereto, did have the duty, authority, and responsibility of administering, managing, operating, directing, and overseeing the confinement, care and rehabilitation of inmates, and more specifically had the authority and duty to enforce lawful and humane policies. Their principal place of business is located at 1920 Technology Parkway in Mechanicsburg, PA 17050.

15.     Defendants, John/Jane Doe (1-100) (hereinafter 'Defendants Doe") are adult individuals who at all times material hereto worked and/or resided in the Commonwealth of Pennsylvania and were employed by SCI Phoenix. Defendants Doe did maintain, control, and/or manage pertinent departments and/or processes within the SCI located at 1200 Mokychic Road, Collegeville, PA 19426.

## IV.  FACTUAL ALLEGATIONS

**Plaintiff's Uninterrupted and Unexplained Solitary Confinement**

16.     The Pennsylvania Department of Corrections is a Commonwealth of Pennsylvania agency that administers and operates the state correctional institutions in the Commonwealth.

17.     Pennsylvania correctional institutions, including SCI-Albion, SCI-Pine Grove, SCI-Forest, and SCI-Phoenix, contain Restricted Housing Units ("RHU") that are designed to temporarily house certain incarcerated persons in solitary confinement away from the facility's general population.

18.     RHUs house incarcerated persons who are placed on the Defendant DOC's Restricted Release List ("RRL").

19.     An incarcerated person cannot be placed on or removed from the RRL without the authorization of the Secretary of the Department of Corrections.

20.     Following Plaintiff's death sentence by a jury in November of 1997, Plaintiff was placed in permanent solitary confinement based solely on his criminal sentence. The Plaintiff's placement was not based on disciplinary violation or individual consideration of his behavior and continued for more than 6 months after vacation of his death-penalty despite the filing of multiple grievances informing Defendants that judgment of sentence was vacated and Plaintiff's housing was, therefore, illegal.

21.     In **Reid et. al., v. Wetzel,** it was agreed upon that within six (6) months of the effective date of the agreement, the Defendant DOC would arrange for all Prisoners to be confined In the CCU to receive a physical and mental health evaluation for the purpose of establishing a baseline to evaluate the effects of long-term solitary confinement even for more than 6 months after vacation of judgment of sentence.

22.     The agreement does not deal with mental health damages even after the evaluation that Is agreed upon. For the Plaintiff who acquired mental health damage during long-term solitary confinement, there Is nothing in the agreement to make him whole. The Defendant DOC is responsible for the damages they caused to the Plaintiff for long-term solitary confinement even for more than 6 months after vacation of judgment of sentence.

23.     For more than twenty-four years, Plaintiff was confined to a small cell for 22 hours each day.

24.     Plaintiff was confined in a cell that is equipped with a light that is illuminated for 24 hours a day—he literally had no time when the light is turned off.

25.     Plaintiff was confined in a cell that provides practically no natural light. Its only window is narrow and tinted, preventing Plaintiff from receiving natural light or viewing the outside world.

26.     Plaintiff had difficulty sleeping in this unnatural environment and, as a consequence, got limited sleep each night.

27.     Plaintiff was permitted only two hours of exercise outside of his cell per day. During those two hours, Plaintiff was confined, by himself, in a fenced-in exercise pen.

28.     The fenced-in pen contains no weights, balls, or exercise equipment of any kind.

29.     For more than twenty-four years, Plaintiff was required to eat all of his meals alone in his cell.

30.     Plaintiff was permitted only approximately 15 minutes to eat meals.

31.     For more than twenty-four years, Plaintiff was permitted only three showers per week.

32.     For more than twenty-four years, Plaintiff was subject to mandatory strip searches and potential body-cavity searches every time he left his cell.

33.     The strip searches were invasive and often carried out in a degrading manner by prison staff.

34.     For more than twenty-four years, Plaintiff was prohibited from having any contact visits, including visits with his attorneys.

35.     Because of his classification as a person on the "Restricted Release List" as described more fully below, Plaintiff's commissary privileges were severely restricted and he was only permitted to purchase certain items from the prison commissary.

36.     The conditions imposed on incarcerated persons housed in solitary confinement are significantly harsher than those imposed on those in the general prison population.

37.     Plaintiff suffered mentally and physically as a result of his confinement in these harsh conditions even after vacation of judgment of sentence. Among other things, he experiences anxiety, distress, and despair, and his physical condition has deteriorated—Plaintiff has lost weight, he suffers from elevated cholesterol, and he has been advised that he is at high risk for developing diabetes.

**The Well-Known and Devastating Effects of Prolonged Solitary Confinement**

38.     As recognized in medical and psychological literature, prolonged solitary confinement causes serious physical and psychological harm to humans. Plaintiff faced all of these risks.

39.      People in solitary confinement are deprived of meaningful social contact and caring human touch, both of which are fundamental human needs.

40.     People who have been held in solitary confinement are at increased risk of decompensating and of experiencing psychotic episodes.

41.     Solitary confinement has been shown to cause and exacerbate mental illness such as depression and anxiety and can cause severe mental deterioration and decreased cognitive functioning.

42.     People who are subjected to solitary confinement often experience extreme feelings of hopelessness, despair, rage, and anger.

43.     Solitary confinement increases the risk of suicide and suicide attempts.

44.     Solitary confinement has also been linked to adverse physical effects, including skin conditions such as rashes and dry, flaky skin; Vitamin D deficiency due to lack of natural light; and hypertension.

45.     Solitary confinement can also exacerbate musculoskeletal pain and cause fluctuations in body weight and loss of muscle mass.

46.     Chronic sleep disturbance and the adverse health impacts associated with it are another common effect of solitary confinement.

47.     These physical effects can be long-lasting and increase mortality risk even after a person is released from prison.

48.     Recognition of the severe and lasting impacts of solitary confinement is not limited to researchers and scientists. Over the past decade, courts, non-governmental organizations, legislatures, and voters have expressed concern about and understanding of the many ways solitary confinement harms individuals as well as society.

49.     Several jurisdictions, including Allegheny County, Pennsylvania, have passed laws banning or restricting the use of solitary confinement in their jails and prisons.

50.     In 2017, the U.S Court of Appeals for the Third Circuit "acknowledge[d] the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement."[1]

51.     The Third Circuit "observed a growing consensus with roots going back a century—that [solitary confinement] conditions … can cause severe and traumatic psychological damage, including anxiety, panic, paranoia, depression, post-traumatic stress disorder, psychosis, and even a disintegration of the basic sense of self identity," as well as physical harm, including suicide and self-mutilation.[2]

52.     Defendant DOC officials, including all of the defendants, were or should have been aware of the psychological and physical dangers of solitary confinement and prolonged isolation, in general, as well as the even greater risk these conditions pose for people with serious mental illness.

53.     Defendant Wetzel "knows well the risks inherent in prolonged isolation … [and has] stated he is familiar with the [scholarly literature] which sets forth at length the harmful effects of solitary confinement."[3]

54.     Defendant Wetzel is a past president of the Association of State Correctional Administrators, which published reports about efforts to limit solitary confinement during his tenure.[4]

55.     Steven Glunt, a former DOC Superintendent and Deputy Secretary and the DOC's representative in a lawsuit challenging the Defendant DOC's use of solitary confinement, has acknowledged that "if you put [people] in an environment where there's not an opportunity to be

---

[1] Palakovic v. Wetzel, 854 F.3d 209, 225 (3d Cir. 2017).
[2] Id. at 225–26 (citing Williams v. Sec'y Pa. Dep't of Corr., 848 F.3d 549, 566–68 (3d Cir. 2017)).
[3] Johnson v. Wetzel, 209 F. Supp. 3d 766, 779 (M.D. Pa. 2016).
[4] Porter v. Pa. Dep't of Corr., 974 F.3d 431, 446 (3d Cir. 2020).

interactive, stimulate their thought processes, to grow … they start to decompensate. And then that increases their risk of self-harm."[5]

56.     In 2014, the Civil Rights Division of the U.S. Department of Justice completed an investigation of the Defendant DOC's use of solitary confinement for prisoners with serious mental illness and/or intellectual disabilities and issued findings that the Defendant DOC's practices violated those prisoners' constitutional rights and their rights under Title II of the ADA.

57.     Throughout the DOJ's investigation, Defendant DOC officials, including Defendant Wetzel, expressed an understanding of the serious harm caused to prisoners by solitary confinement.

58.     Indeed, "the substantial risks of prolonged solitary confinement are obvious, longstanding, pervasive, well-documented, [and] expressly noted by [DOC] officials in the past."[6]

59.     It would "defy logic" to suggest that any corrections professionals could be unaware of the potential harm that the lack of human interaction in solitary confinement can cause.[7]

**The Restricted Release List**

60.     The Restricted Release List ("RRL") is a list of DOC prisoners who are subjected to indefinite, and sometimes permanent, solitary confinement.

61.     People on the RRL are not removed from the RRL until and unless the DOC Secretary—currently Defendant Little —authorizes their removal.

---

[5] Id. at 445.
[6] Porter v. Pa. Dep't of Corr., 974 F.3d at 445 (cleaned up).
[7] See Porter v. Clarke, 923 F.3d 348, 361 (4th Cir. 2019) (citations omitted).

62.    Defendants, and those at their direction, failed to conduct any meaningful review of Plaintiff's status on the RRL even long after vacation of judgment of sentence and despite the filing of multiple grievances.

63.    Plaintiff frequently was not provided any notice regarding when his status on the RRL was set to be reviewed.

64.    Plaintiff frequently was not provided notice of any action taken by the superintendents, or DOC Secretary, regarding a decision to keep him on the RRL.

65.    Plaintiff was told by Defendants what he had to do to be removed from the RRL.

66.    The PRCs at each of the facilities where Plaintiff has spent time frequently have failed to timely review Plaintiff's status or did not conduct a review altogether for a lengthy period after vacation of judgment of sentence and despite multiple written grievances.  This was unreasonable and violated law known to all Defendants and, as a consequence, no Defendant is entitled to any immunity because each Defendant was personally involved in the continued and lengthy continued illegal detention long after vacation of judgment of sentence.

67.    Any review that was conducted by or at the direction of Defendants was perfunctory in nature and failed to address the continuing violation of Plaintiff's Constitutional rights.

68.    Indeed, each PRC Report contains a box where the committee is supposed to provide a "progress report" and list "specific rationale for continued placement or for transfer."

69.    Plaintiff's PRC Reports do not contain specific reasoning or provide a basis for why Plaintiff remained on the RRL and was housed in the solitary confinement long after vacation of judgment of sentence.

70.    Plaintiff has not received any recent misconduct.

71.     As a result of Defendants' actions, or inactions, Plaintiff has been deprived of basic human needs, including environmental stimulation and social interaction for more than 6 months after vacation of judgment of sentence.

72.     The solitary confinement to which Defendants subjected Plaintiff even after vacation of judgment of sentence is cruel and unusual punishment in violation of his Eighth Amendment protections.

73.     Defendants' lack of meaningful periodic review of Plaintiff housing status, and their illusory procedure for how Plaintiff was supposed to earn a return to general population, constitutes a violation of Plaintiff's due process protections under the Fourteenth Amendment.

## COUNT I – 42 U.S.C. § 1983 VIOLATION OF EIGHTH AMENDMENT AGAINST DEFENDANTS WETZEL, LITTLE, SORBER, FAUBERT, DOES, FAUBERT, AND DOC

74.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 73 as if fully set forth herein.

75.     Defendants violated Plaintiff's right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment, by acts and omissions that have caused him to be subjected to conditions that deprive him of the minimal civilized measure of life's necessities, including but not limited to physical health, mental health, environmental stimulation, social interaction, and basic human dignity.

76.     Defendants have committed these acts and omissions with deliberate indifference to the substantial risks of serious physical and psychological harm to Plaintiff. Defendant's acts and omissions have caused, and continue to cause, substantial physical and psychological harm to Plaintiff, and have exposed him to a substantial risk of future harm and permanent psychological damage.

77.     Each Defendant had a duty to intervene to prevent Plaintiff ongoing confinement in unconstitutional conditions, had multiple reasonable opportunities to intervene, and failed to intervene.

### COUNT II – 42 U.S.C. § 1983 VIOLATION OF FOURTEENTH AMENDMENT AGAINST DEFENDANTS WETZEL, LITTLE, SORBER, FAUBERT, DOES, FAUBERT, AND DOC

78.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 77 as if fully set forth herein.

79.     Defendants violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to provide Plaintiff with the reasons for his continued placement in solitary confinement and/or on the RRL; failing to provide Plaintiff a meaningful opportunity to be heard in order to challenge his continued placement in solitary confinement and/or the RRL; and failing to inform Plaintiff of what is required of him to be released from solitary confinement and/or the RRL even after vacation of judgment of sentence and despite multiple written grievances by Plaintiff.

80.     Defendants' acts and omissions have caused, and continue to cause, substantial physical and psychological harm to Plaintiff.

### DEMAND FOR JURY TRIAL

81.     Plaintiff demands trial of his claims by a jury.

### REQUESTED RELIEF

82.     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against defendants and grant the following relief:

a.  An award of damages sufficient to compensate Plaintiff for his injuries, as well as punitive damages to punish and deter Defendants and those in their position from

recklessly and wantonly violating Plaintiff's rights as described herein, attorneys'

fees and costs, and such other relief the Court deems proper.

Respectfully submitted,

/s//   Israel A. Schwartz
ISRAEL A. SCHWARTZ, ESQUIRE

/s//   Stephen T. O'Hanlon
STEPHEN T. O'HANLON, ESQUIRE

September 18, 2023

**O'HANLON SCHWARTZ, P.C.**
BY: Stephen T. O'Hanlon, Esquire (PA Bar # 208428)
     Israel A. Schwartz, Esquire (PA Bar # 327623)
Attorneys for Plaintiff
2 Penn Center, Suite 1410
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Tel:  (267) 546-9066
Fax: (215) 563-6617
steve@ohanlonschwartz.com
izzy@ohanlonschwartz.com